THE PEOPLE ex rel. CHARLES G. BURNHAM, Respondent, *v.* EDWARD F. JONES et al., Commissioners of the Land Office, Appellants.

On application to the commissioners of the land office for a grant of land under the water of Lake Ontario, the applicant claimed to have acquired title to the adjoining uplands under a deed which described the land conveyed by metes and bounds; beginning at a point specified, "in the west line of a private street or avenue; * * * thence northerly along said street two hundred and ten feet to the beach of Lake Ontario; thence westerly at right angles one hundred feet," etc., "together with the use and privilege of the beach at the end of said street, and for a distance of one hundred feet westerly therefrom in common with the owners of lots on said private street * * * for bathing and boating." The uncontradicted evidence showed that there was a strip of land between the lake and the premises embraced in the metes and bounds. *Held,* that the deed did not give a title to any land on the shore beyond the premises embraced in the metes and bounds; and that the owner of said strip of land was alone entitled, under the statute (1 R. S. 208, § 67), to the grant from the commissioners.

The rule that, where there is an uncertainty as to the plot of land intended to be conveyed, arising out of differences between the land described by metes and bounds and that embraced in lines to monuments or objects mentioned in the deeds, the former must give way, and are controlled by the latter, is not an inflexible one; and it applies only when the intention of the parties has been left in doubt by the language of the conveyance.

So, also, the general rule that a boundary of land by or along a beach will be held as having reference to and including only the lands washed by the sea between high and low-water mark, will necessarily give way to any clearly expressed intent to the contrary effect contained in the deed.

The line of riparian proprietorship along said lake extends only to high-water mark.

A riparian proprietor, conveying lands adjacent to navigable waters may so limit his grant as to reserve to himself not only his riparian privileges in the waters, but also subsequent accretions to the soil formed by the operation of natural causes.

The Supreme Court has authority to issue a writ of *certiorari* to review the decision made by said commissioners on such an application, and it is no valid objection to its power to review that a grant in pursuance of the decision will be void.

While the commissioners may not be controlled in the exercise of their discretion upon the question as to whether a grant shall be made or not, their decision as to whether the applicant or another is the owner of the adjacent uplands, and so entitled to the grant, is reviewable upon *certiorari.* (Code of Civ. Pro. § 2140.) The decision is a judicial one, and must precede the making of a grant.

(Argued January 30, 1889; decided March 5, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made July 2, 1884, which reversed a determination of the commissioners of the land office directing the issuing to the Bartholomay Brewing Company of Rochester, N. Y., of letters-patent for certain land under water, which determination was brought up for review by *certiorari.*

The material facts are stated in the opinion.

*Charles F. Tabor,* attorney-general, for appellant. The order of the General Term, reversing the resolution of the commissioners of the land office, and denying the application of the Bartholomay Brewing Company, is appealable to this court. (Code Civ. Pro. §§ 190, subd. 3, 2141; *People ex rel. Smith* v. *Comrs.,* 103 N. Y. 370; *In re N. Y. P. E. School,* 82 id. 606; *In re Moore,* 67 id. 555; *People ex rel. Allen* v. *Knowles,* 47 id. 415; *Filke* v. *B. & A. R. R. Co.,* 53 id. 549; *People ex rel. Millard* v. *Chapin,* 104 id. 96.) The respondents, as commissioners of the land office, had jurisdiction to make the determination sought to be reviewed by this proceeding. (*People* v. *Canal Appraisers,* 33 N. Y. 461, 467; 1 R. S. [7th ed.] 559, § 1, 575, § 57; *People*

1889.] PEOPLE ex rel. BURNHAM *v.* JONES et al. 599

Statement of case.

v. *Mauran*, 5 Denio, 377; *Lewis* v. *State*, 96 N. Y. 71; *People ex rel. Benedict* v. *Dennison*, 28 Hun, 330; *People* v. *Denison*, 84 N. Y. 272; *Thompson* v. *Comrs.*, 2 Abb. Pr. 250; *Lord* v. *Thomas*, 64 N. Y. 109; *Carr* v. *U. S.*, 98 U. S. 433.) The determination of the land board in this proceeding did not finally determine the rights of the relator to the land in dispute, and, therefore, the writ of *certiorari* should not have been issued. (Code Civ. Pro. § 2122; *People ex rel. Wright* v. *Chapin*, 104 N. Y. 370; *People ex rel. Kemp* v. *Bd. of Comrs.*, 100 id. 85; *People ex rel. Taylor* v. *Trustees*, 3 Hun, 549; *People* v. *Supers.*, 34 N. Y. 518.) The relator had other remedies, and, therefore, cannot review by *certiorari* the determination of the board. (*People* v. *Supers.*, 1 Hill, 195; *People* v. *Bd. of Health*, 33 Barb. 344; *People* v. *Supers.*, 44 id. 467; *People ex rel. Banks* v. *Colgate*, 67 N. Y. 512; *In re N. Y., W. S. & B. R. Co.*, 101 id. 685.) The determination reviewed by the General Term was not a judicial act. (*People ex rel. Cayuga Nation* v. *Bd. of Comrs.*, 99 N. Y. 648; *People ex rel. Corwin* v. *Walter*, 68 N. Y. 410; *People* v. *Fire Comrs.*, 77 id. 605; *People* v. *Supers.*, 25 Hun, 131; *People ex rel. Agnew* v. *Mayor*, 2 Hill, 9; *In re Morris Squire*, 2 id. 14; *People* v. *Board Fire Comrs.*, 82 N. Y. 359; *Wright* v. *Chapin*, 104 id. 369; *People ex rel. Dean* v. *Fairchild*, 67 id. 334.) The General Term could only inquire whether the board had kept within the limits of the jurisdiction given by law. (*People ex rel. Peck* v. *Canal Board*, 29 Hun, 159; *People ex rel. Polk* v. *Board of Police*, 69 N. Y. 408.) This is not a case where, in the proper exercise of its discretion, the Supreme Court should have allowed the writ to issue. (*People ex rel.* v. *Supers.*, 15 Wend. 206; *People ex rel. Curtis* v. *City of Utica*, 69 Barb. 9.) On the merits, the order of the General Term should be reversed. (*Smith* v. *City of Rochester*, 92 N. Y. 476; *People* v. *Canal Appraisers*, 33 id. 483; 3 Kent's Com. 549; *Gould* v. *H. R. R. R. Co.*, 6 N. Y. 522; *Barney* v. *Keokuk*, 94 U. S. 436; *Wheeler* v. *Spinola*, 54 N. Y. 377; *C. B. Co.* v.

*Paige,* 83 id. 185 ; *Morgan* v. *King,* 35 id. 454 ; *Sisson* v. *Cummings,* 106 id. 62 ; *Halsey* v. *McCormick,* 13 id. 296 ; *Murphy* v. *City of Brooklyn,* 98 id. 644 ; *Ledyard* v. *Ten Eyck,* 36 Barb. 127 ; *Mayor, etc.,* v. *Hart,* 95 N. Y. 443 ; *Roberts* v. *Baumgarten,* 19 J. & S. 482 ; *Rogers* v. *Jones,* 1 Wend. 237 ; *People* v. *N. Y. & S. I. F. Co.,* 68 N. Y. 71.) The description in the deed from Whitney to Upton "to the beach of Lake Ontario," and the term "beach," as here used, was used synonymously with "shore." (*Littlefield* v. *Littlefield,* 28 Maine, 180 ; *Cutts* v. *Hussey,* 15 id. 24 ; *Hodge* v. *Boothby,* 48 id. 68 ; *Doane* v. *Welcott,* 5 Gray, 335.) Whether Whitney, the common source of title, owned to low or only to high-water mark, in either event, by the deed from him to Upton, he conveyed all the land owned by him within the east and west boundaries, seventy-three feet north of Beach avenue, to the lake. (1 R. S. [7th ed.] 2205, § 1 ; *Craig* v. *Wells,* 11 N. Y. 315 ; *Jackson* v. *Gardner,* 8 Johns. 394 ; *Glover* v. *Shields,* 32 Barb. 374.) From the expression used in the grant from Whitney and wife to Upton, there can be no doubt but that the grantor intended to convey to the waters of Lake Ontario, which was all the land he had in that direction, as he certainly had no title to the lands under water. (*Rowe* v. *Strong,* 107 N. Y. 357 ; *County of St. Clair* v. *Lomington,* 23 Wall. 63.) The general rule is, "in the construction of grants, both courses and distances must give way to natural or artificial monuments or objects, and courses must be varied and distances lengthened and shortened so as to conform to the natural ascertained objects or bounds called for by the grant. * * * All grants or conveyances are supposed to be made with reference to an actual view of the premises by the parties thereto." (*Wendell* v. *People,* 8 Wend. 130 ; *White* v. *Williams,* 48 N. Y. 347 ; *Yates* v. *Van De Bogart,* 56 N. Y. 531 ; *Sherman* v. *McKean,* 38 N. Y. 266 ; *Jones* v. *Holstein,* 47 Barb. 311 ; *Case* v. *Dexter,* 106 N. Y. 553 ; *Hathaway* v. *Doyle,* 6 Hill, 453, 455 ; *Robinson* v. *Kline,* 70 N. Y. 154.) The fact that the lot of applicant was bounded by the waters of the lake at the time

Whitney conveyed in 1873, being asserted by counsel for applicant, and not denied by remonstrant, it must be conclusive against the claim made by the relator. The return must be taken as conclusive and acted upon as true. (*People ex rel. Sims* v. *Fire Comrs.*, 73 N. Y. 437, 439; *People ex rel. McCarthy* v. *French*, 29 Hun, 111; *Cooper* v. *Bean*, 5 Lans. 322; *McDonald* v. *Christie*, 42 Barb. 36, 39.) The doctrine of accretion or alluvion is well settled and is defined as " the addition to land by washing of the sea or rivers;" the characteristic of alluvion is its imperceptible increase, so that it cannot be perceived how much is added in each moment of time. (Angell on Water-courses [7th ed.] 49, §§ 53, 59; *Cook* v. *Connor*, 58 N. Y. 437; *Halsey* v. *McCormick*, 18 id. 147; *County of St. Clair* v. *Livingston*, 23 Wall. 46; *Mulry* v. *Norton*, 100 N. Y. 436.)

*William B. Hornblower* for respondent. The commissioners of the land office were acting judicially in this matter and their determination can be reviewed by *certiorari*. (Const. of 1846, art. 5, §§ 5, 6; 1 R. S. 198, chap. 9, tit. 5, art. 1, § 1; Laws of 1850, chap. 203, § 1; Laws of 1839, chap. 134; Laws of 1869, chap. 190; *People* v. *Schemerhorn*, 19 Barb. 541; *Ledyard* v. *Ten Eyck*, 36 id. 102; *Starr* v. *Trustees*, 6 Wend. 564; *Lawton* v. *Comrs.*, 2 Caine, 182; 4 Hawk. 144; 1 Salk. 146; 1 Ld. Raym. 580; *Wildy* v. *Washburn*, 16 Johns. 49; *Fitch* v. *Comrs.*, 22 Wend. 132; *People* v. *Judges*, 24 id. 249; *People* v. *Goodwin*, 5 N. Y. 568; *People* v. *Van Alstyne*, 32 Barb. 131; *People ex rel. Seymour* v. *Canal Board*, 7 Lans. 220; *Peop'e ex rel. N. Y., O. & W. R. R. Co.* v. *Chapin*, 42 Hun, 239; *People ex rel. Cayuga Indians* v. *Comrs.*, 34 id. 588.) The court can inquire not only into the jurisdiction of the commissioners to pass upon the question, but upon the regularity and legality of their decision upon the proofs before them, and the sufficiency of the proofs to support the decision. (*In re People* v. *Board of Assessors*, 39 N. Y. 88; *People* v. *Van Alstyne*, 32 Barb. 131; *People ex rel. Haines* v. *Smith*,

45 N. Y. 772; *People ex rel.* v. *Eddy,* 57 Barb. 593; *People ex rel.* v. *Board of Police,* 72 N. Y. 415; Code of Civ. Pro. § 2140; 69 N. Y. 408.) The deed from Whitney, under which the brewing company claim, did not pass any title to the land in controversy, except an easement "for bathing and boating." (*Higinbotham* v. *Stoddard,* 72 N. Y. 94; *B., N. Y. & E. R. R. Co.* v. *Stigeler,* 61 id. 348; *Baldwin* v. *Brown,* 16 id. 359; *Griffiths* v. *Morrison,* 106 id. 165; *People ex rel. Banks* v. *Colgate,* 67 id. 512.) In this case the grant of an easement ought to be construed as granting something which, but for the grant, would not have passed by the deed. (*Mather* v. *Chapman,* 40 Conn. 400.)

RUGER, Ch. J. The principal question in this case relates to the riparian proprietorship, of a strip of land extending about one hundred feet along the south shore of Lake Ontario, at the village of Charlotte in Monroe county. The question arose over an application to the commissioners of the land office, for a grant from the state, of land under water in front of said premises made by the Bartholomay Brewing Company. of Rochester, claiming to be the owners of the uplands adjoining the lake. This claim was contested before the commissioners by one Charles G. Burnham, who also claimed title thereto, and upon a trial of such claims the commissioners decided to award the grant to the brewery company. Upon a *certiorari* brought by Burnham to review the proceedings they were removed into the Supreme Court, and upon a hearing thereon the award of the commissioners was reversed and the application denied. The commissioners appeal from this reversal to this court. A determination of the questions presented, involves purely a question of law, and is controlled by the construction to be given to the deeds presented by the respective parties, and the statutes giving authority to the commissioners to execute grants of lands under navigable water for the state. The board of commissioners of the land office is organized under section 5 of article 5 of the Constitution, and its powers and duties are defined by that section to be such "as now

are or hereafter may be prescribed by law." Their powers and duties, so far as the questions in this case are affected, may be found in 1 Revised Statutes (7th ed.) pages 573 *et seq.* By section 67 of the statutes referred to, the commissioners were authorized to make grants of lands under the waters of navigable rivers and lakes in the state, to the proprietors of the adjacent uplands; but they were expressly prohibited from making such grants to other persons, and such grants, if made, were declared to be void. Before any grant is authorized to be made the applicant therefor is required to give six weeks' notice of his application by advertisement in a newspaper of the county where the land is situated, and post a copy of such advertisement on the door of the court-house of such county (§ 70). The commissioners have authority to compel the attendance of witnesses in an application pending before them, and, by implication, the right to take testimony, hear counsel, and adjudicate upon the questions presented. (Chap. 134, Laws of 1839.) The hearing in question was had before the commissioners in pursuance of the authority of the statutes referred to, and both the relator and the Bartholomay Brewing Company were present and heard by their witnesses and counsel in support of their respective claims. Both claimed title to the disputed premises by virtue of conveyances from Whitney, the conceded original owner. The brewing company under a deed to one Upton, dated in 1873, and the relator under one dated in 1886. The real question is, therefore, whether the first deed conveyed title to the premises in dispute or not. The uncontradicted evidence in the case shows that there was a strip of land situated between the lake and the premises embraced in the metes and bounds contained in the first deed, and the adjudication by the commissioners was made upon the assumption that such deed conveyed the title thereof to the grantors of the Bartholomay Brewing Company. The adjudication proceeded upon the ground that the true construction of the deed did not confine the grantees to the land included within the metes and bounds; but extended beyond them to the natural monument constituted

by the waters of the lake. The rule is well settled that where there is an uncertainty as to the plot of land intended to be conveyed, arising out of differences between the land described by metes and bounds, and that embraced in lines extending to natural or artificial monuments or objects mentioned in the deed, that the former shall give way, as being less certain, and be controlled by the latter description. ( *Wendell* v. *People,* 8 Wend. 183; *Yates* v. *Van De Bogert,* 56 N. Y. 531.) But this rule is not inflexible, and is applicable only where there is an ambiguity in the description and the intention of the parties has been left in doubt by the language of the conveyance. (*People ex rel. Banks* v. *Colgate,* 67 N. Y. 512; *Higinbotham* v. *Stoddard,* 72 id. 94; *Buffalo, N. Y. & Erie R. R. Co.* v. *Stigeler,* 61 id. 348.) When that intention is clearly revealed in the instrument it furnishes the rule by which deeds, as well as statutes and other contracts, must be construed. (*Case* v. *Dexter,* 106 N. Y. 553.) The description in the deed of 1873 is, so far as it is material in this case, as follows: " Part of lot 20, in the village of Charlotte, * * * beginning in the west line of a private street or avenue, thirty feet wide, extending from Beach avenue parallel with and two hundred and fifty feet easterly from the west line of said lot 20, at a point seventy-three feet northerly from the north line of Beach avenue; *thence northerly along said street two hundred and ten feet to the beach of Lake Ontario; thence westerly at right angles one hundred feet * * * to lands of J. D. Husband and others; * * * thence southerly at right angles two hundred and ten feet along said Husband's land; thence easterly at right angles one hundred feet to place of beginning, together with the use and privilege of the beach at the end of said street,* and for a distance of one hundred feet westerly therefrom, in common with the owners of lots on said private street, and the owners of lots in the south-west quarter of said lot for bathing and boating." As claimed by the brewing company, the significant words in the deed are those which describe their easterly line as running northerly " to the beach of Lake Ontario," and from thence to Husband's line.

We are referred by the learned attorney general to authorities holding that, ordinarily, a grant of lands under the name of a beach, or a boundary of lands upon, by or along a beach, would be held synonymous with the words " shore or strand," and as having reference to and including only the lands washed by the sea between high-water and low-water mark. (*Trustees, etc.,* v. *Kirk,* 68 N. Y. 459.) Such, undoubtedly, would be the general interpretation of similar words if there were nothing in the deed showing an intention to the contrary; but this rule of construction would necessarily give way, under all authorities, to any clearly expressed intention to a contrary effect contained in the deed. Here the words themselves are equivocal, as they purport to convey the line at one point " to the beach," and, according to general understanding, such words would not include any part of the lands referred to as the terminal point. Their literal signification is satisfied by a line which touches the beach at a single point; but even this might be overcome if other language in the deed showed an intention to give the grantees title in the beach or a water front on the lake. (*Bedlow* v. *Floating Dry Dock Co.,* 112 N. Y. 263.) The contrary of such an intention is, we think, clearly and unequivocally expressed in the deed. Not only is the north line described to be a straight line, not following the natural sinuosities of a shore or water front, but runs to a fixed point in the line of Husband's land, forming a mathematical parallelogram plainly opposed to the theory of a diversion to accommodate the irregularities of a varying line. (*Higinbotham* v. *Stoddard,* 72 N. Y. 94; *People ex rel. Banks* v. *Colgate,* 87 id. 512.)

A circumstance, however, which is quite decisive upon this point, is the clause conveying an easement only in the land beyond the expressed line to the grantees therein, thus implying the existence of land between the land granted and the lake, to which the grantor claimed title, and in which he assumed the right to grant an easement. (*Mather* v. *Chapman,* 40 Conn. 400.) It would be a manifest absurdity to suppose that the grantor was attempting to convey an ease ment to grantees in lands, in whom he had already, by the

**606** PEOPLE ex rel. BURNHAM *v.* JONES et al. [March,

Opinion of the Court, per RUGER, Ch. J.

same instrument, vested an absolute estate in fee. The latter clause, upon the assumption of a conveyance of a fee by the prior part of the deed, would have no operation, and involves an interpretation opposed to settled rules. This construction is also fortified by the fact that, as late as 1885, the brewing company procured and accepted a second deed from Whitney of other lands in lot 20, bounded along the shore of the lake, which also contained the grant of an easement in connection therewith, in common with other owners of lots, over the beach of the lake lying north of the lands heretofore conveyed by the deed of 1873, being the land in question. A more explicit disavowal of title in such lands could hardly be expressed in language. We think intentions so clearly expressed as those contained in the deed of 1873, are not impaired by reference to terms employed in other and extrinsic conveyances, and need not to be strengthened by allusions to ulterior considerations. We are, therefore, of the opinion that the brewing company did not, under the deed in question, take title to any land on the shore of the lake beyond the rectangle described in the metes and bounds therein employed.

No question arises in this case over the line of riparian proprietorship along the lake, as it is conceded by both parties that it extends only to high-water mark on inland seas or large navigable bodies of water like those of Lake Ontario (*Smith* v. *City of Rochester*, 92 N. Y. 463), and that the title to all lands beyond high-water mark or under water is in the state. (Id.) Neither can it be doubted but that a riparian owner, conveying lands adjacent to navigable waters, may so limit his grant as to reserve to himself not only his riparian privileges in the water, but also subsequent accretions to the soil formed by the operation of natural causes. This follows necessarily from the absolute right which the owner has to impose such terms and conditions upon his grants as he may deem necessary or proper. Whatever may have been the motive or however inconsiderable may have been the right ungranted, the only inquiry here is whether any land next to the lake remained unconveyed by the deeds of 1873. (*People ex rel. Banks* v.

*Colgate, supra.*)    If there did, such land was concededly con-
veyed by the deed from the Whitneys to Burnham, executed
in 1886.

The undisputed evidence in the record shows that there was
a strip of land of varying depth, from thirty feet and upwards,
lying between the lake and the rectangle described in the deed
of 1873 at the time of the hearing before the commissioners.
Whenever this land was formed, and whether it existed to its
full extent, at the time of the conveyance of 1873, or not, we
think is immaterial, as all accretions to the shore enured to the
benefit of that person who owned the land adjacent to the
water, and he alone, if any, was entitled to the grant from the
commissioners under the statute.    (*People ex rel. Banks* v.
*Colgate, supra.*)

The only remaining question relates to the authority
of the Supreme Court to review the award made by the
commissioners under a writ of *certiorari.*    It is quite earn-
estly contended by the attorney-general that such authority
does not exist.    We are of the opinion that the writ properly
issued in this case, and afforded the only adequate remedy for
the protection and preservation of the relator's right to a grant
of lands under water at the places indicated, if any was to
be made by the commissioners.    It is not easy to see any other
sufficient remedy open to him, while the existence of an out-
standing grant from the commissioners to other parties, appar-
ently barring him from access to the water, however invalid
it might be, would seriously impair the market-value of his
property, and be the source of danger, annoyance and incon-
venience in the future.    It is no valid objection to the power
of review, that a grant in pursuance of the decision would be
void, for the relator had the right to have even a void determ-
ination set aside if it affected any interest belonging to him.
(*Fitch* v. *Commissioners, etc.*, 22 Wend. 132.)

It is not claimed by the relator that the commissioners
can be controlled in the exercise of their discretion upon
the question whether a grant shall be made or not; but
it is insisted if they do make such grant, it shall issue to the

owner of the adjacent uplands, and not to a stranger.  This is clearly the right of the relator, conferred upon him by statute and upon a decision, in a controversy between himself and another, holding that he is not such owner, and is, therefore, not entitled to such grant, made by a tribunal authorized by statute to hear and decide the question, he was entitled at common-law, as he now is by the Code, to review the determination in the courts by *certiorari.*  (*Wildy* v. *Washburn*, 16 Johns. 49; *Starr* v. *Trustees*, 6 Wend. 564; *Lawton* v. *Comrs., etc.*, 2 Caine's Rep. 182; Code of Civil Pro. § 2120.) That the exercise by the commissioners of the power of determining who was the riparian owner of the uplands in question was a judicial one, and must always precede the making of a grant by the commissioners, can admit of no doubt.  The statutes clearly contemplate the compulsory attendance of witnesses; the taking of evidence; the consideration thereof by the board, and a judicial determination of the respective claims according thereto.  The power to entertain an application was made dependent upon notice previously given to all persons interested, and such notice clearly implied the right of such persons to be heard upon the determination of such application.  No lawful determination of the questions involved could be made except after such hearing through proofs and arguments of counsel.  (*People ex rel. Banks* v. *Colgate, supra.*)  It was held by this court in the *People* v. *Nichols* (79 N. Y. 582), that a power to remove certain city officers "for cause," and after opportunity to be heard, given to the mayor of New York, can only be exercised "upon just and reasonable grounds and after notice to the person charged. The proceeding must be instituted upon specific charges sufficient in their nature to warrant the removal, which, unless admitted, must be proved.  The defendant may cross-examine the witnesses to support the charges; call others in his defense, and in all steps of the proceeding is entitled to be represented by counsel."  The proceeding, therefore, being judicial in character, is subject to review by a writ of *certiorari* issued by the Supreme Court.

1889.]    PEOPLE ex rel. BURNHAM *v.* JONES et al.    609

Opinion of the Court, per RUGER, Ch. J.

The learned attorney-general has cited a number of cases to support his contention; but, upon examination, we find them to be cases where the writ was addressed to ministerial officers, or where the determination sought to be reviewed involved the exercise of legislative or discretionary power. Here no such questions were involved; but the commissioners were authorized to determine the issue presented as a question of law alone upon lawful evidence and in accordance with legal rules.    That such a determination is reviewable by *certiorari* is not subject to doubt.    It was said by Justice SPENCER in the *Lawton Case* (*supra*), that, " It is a position beyond contradiction, that the King's Bench, in England (and this court is clothed with the same common-law authority), has and may award a *certiorari*, not only to inferior courts, but to persons invested by the legislature with power to decide on the property or rights of the citizen, even in cases where they are authorized by statute finally to hear and determine."    That the determination of the commissioners was of such a character as authorized the court to examine into it and correct it, if erroneous, under the provisions of the Code, seems to be quite clear.    (*People ex rel. Kent* v. *Bd. of Fire Comrs.*, 100 N. Y. 83.)    The cases in which the court is authorized by the Code to review by *certiorari* the " determination of a body or officer," include, among others, those in which the question arises (subd. 3) "whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator."    (Subd. 4) " Whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination."    (Code of Civ. Pro. § 2140.)    The proof upon the hearing, as we have seen, did not authorize the determination made by the commissioners, and it violated the statute from which they derived authority to act, in awarding a grant to a person or corporation not entitled thereto. (*People* v. *Board of Assessors*, 39 N. Y. 88.)

In accordance with the views expressed, the judgment of

the General Term should be modified by striking out that part dismissing the application to the commissioners of the land office, and affirmed as thus modified.

All concur, except DANFORTH, J., not voting.

Judgment accordingly.