CONSTANTINE W. BENSON, Appellant, _v._ HENRY D. TOWNSEND _et al._, Respondents.

_Supreme Court, Second Department, General Term, September_ 9, 1889.

1. _Deed._ _Description._—A grant which gives certain privileges in a beach to the grantee, and reserves all other rights to the grantor, but binds the latter not to build thereon in front of the conveyed premises, does not, though bounded by the beach, extend to high-water mark.

2. _Same._—A deed, whose sole easterly boundary is the bay or narrows, includes the beach or uplands.

3. _Real property._ _Accretion._—The title of the original owner to portions of the mainland, which have been submerged by the sea, attaches upon a subsequent restoration.

4. _Same._ _Determination._—In an action to determine a claim to real estate, the defendant, where the plaintiff fails to prove possession, may have the complaint dismissed, but cannot, without proving his own title, have judgment in his favor.

5. *Appeal.  Direction.*—Where each party asks the court to direct a verdict in his own favor, and upon the granting of defendant's request, the plaintiff asks the submission of only one fact to the jury, he thereby consents to submit the determination of all other questions to the court.

6. *Same.*—In such case, the appellate court need to determine only whether the evidence justifies a verdict for the defendant, and whether a finding of the disputed question of fact in plaintiff's favor would have conclusively determined his right to the verdict.

*Tracy, McFarland, Boardman & Platt*, for appellant.

*Winsor, Marsh & Townsend*, for respondents.

CULLEN, J.—This is an action brought under the statute to determine claims to real property. The complaint alleged possession in the plaintiff and his grantors of the premises described in the complaint for more than three years. The answers of the defendants put in issue the possession of the plaintiff or his grantors, and set up title in themselves. At the close of the plaintiff's case the defendants asked for a dismissal of the complaint upon the ground that the plaintiff had failed to prove an actual possession of the land in controversy. This application was denied. At the close of the evidence both parties moved for a direction of the verdict. The defendants' request was granted and a verdict directed in their favor. The plaintiff then asked to go to the jury on the question whether in 1807 there was a strip of upland between the lot of Perrine (plaintiff's remote grantor), and the waters of the bay. This request was denied. Judgment was entered upon the verdict and from that judgment this appeal was taken.

As the plaintiff asked a direction of the verdict in his own favor and upon a denial requested the submission of only one fact to the jury, it submitted the determination of all questions involved save that one to the court. Kirtz *v.* Peck, 113 N. Y. 222. It is, therefore, only necessary for us upon this appeal to decide first, whether the evidence adduced on the trial would have justified a verdict for the defendants,

and second, whether a finding of the disputed question of fact in plaintiff's favor would have conclusively determined his right to the verdict.

The lands in dispute are a narrow tract of shore or beach lands between the bluff and the waters of the New York bay and a tract of land under water adjacent to and in front of such strip. The common source of the title of both parties is concededly Magdelena Cripps and Elisha her husband.

Prior to the year 1795, these persons owned a farm which included the premises in question, extending down to high-water mark. In 1805 Cripps and his wife conveyed to Cornelius Perrine one acre of land. It is through this conveyance that the plaintiff traces his title and as to its construction that the principal question in this case arises. This deed conveys a plot " Beginning at the north corner of a smoke house now standing by the beach, running north fifty-five degrees west, two chains, seventy-five links, along the beach to the line between the lands and salt meadows of said Cripps and Cornelius Corson," thence by various courses to the place of beginning. " Bounded northerly by the meadows of Cornelius Corson, southerly and westerly by other land of said Cripps and easterly by the beach. After this description and the ordinary covenants as to title follows this covenant : " And it is further covenanted and agreed by and between the parties to these presents that it may and shall be lawful to and for the said party of the second part to have the privilege of a road from the middle of the front of said acre lot of twenty feet broad down to the bay or water, to take off or put on whatever he sees fit without incumbering the road or shore. And also to allow the said party of the second part, his heirs and assigns, one-half the profit arising from the drift that comes on the shore in front of said lot and to pass and re-pass to get the said drift and no other right of the beach or shore, and the said party of the first part for himself, his heirs and assigns doth further covenant that they will not build any house in front of said lot. All other privileges of

said beach and shore the said party of the first part doth reserve to himself and to his heirs and assigns."

The plaintiff contends that this description carried the grant to high-water mark on the bay.    The judge at circuit held to the contrary.    We think that ruling was correct. We think it not possible to distinguish in principle this case from that of The People *v.* Jones, 112 N. Y. 597. The question in the case cited, as in the present one, was whether the grant extended to the water or not.    In the description then before the court, the boundary ran to the beach and thence in a line at right angles to the previous course.    In this deed the boundary begins by the beach and runs along the beach.    This description, it must be conceded, much better supports a claim to extend to high-water mark than that in the other case.    But the decisive point on the interpretation of the deed was held by the court of appeals to be the grant of the easement in the beach, which was deemed inconsistent with a previous grant of the beach.

In this respect the deed before us is far stronger than that in The People *v.* Jones.    The grantor gives a road twenty feet wide over the beach to the bay, and half of the drift that may be cast on the shore.    He covenants not to build in front of the granted premises, and expressly reserves all other privileges of the beach or shore to himself.    This is plainly inconsistent with the claim that the grant extended to the water.    The evidence shows that a bluff rises some distance from the high-water mark, this distance varying from time to time as the water makes inroads on the shore or recedes. Such a strip between a bluff and the water is commonly called the beach.

That term in the deed can, therefore, be well satisfied by giving it its ordinary instead of its technical, legal interpretation, when it is palpable that such was the signification intended.    This construction is further supported by the fact that exact dimensions of the plot were given, and that the dimensions of the plot, as occupied under the grant, do not extend to the water.

**17**

Though the plaintiff failed to show title, this would not authorize the verdict in favor of the defendants, for the plaintiff's possession being proved, the defendants were bound to show a paramount title.

The examination of the deed to Perrine has shown that there remained in Cripps, after that conveyance, a strip of land between the acre lot and the waters of the bay. The defendants trace their title by a regular chain from Cripps, and if they have shown succession to all that was held and possessed by the Cripps, their title is established. The plaintiff assails but one link in that chain. After the death of Cripps and wife, their heirs brought proceedings for the partition of their property and a sale was held. It is contended that the deed on such sale did not convey the lands in dispute. The petition by which the proceedings were instituted avers that the parties are tenants in common of a certain farm in Southfield, whereof Elisha Cripps died seized, " bounded easterly by the bay or narrows, southerly by land of John Seguine, westerly by land of Richard Silve, and northerly by land of Cornelius Perrine and Cornelius Corson, containing twenty-five acres more or less." The commissioners reported that they had been appointed to make partition of " the farm of which Elisha Cripps died seized," and that partition could not be made without prejudice to the interests of the parties. On this an order for sale was made. The deed from the commissioners recites the petition for the partition of " the farm of which Elisha Cripps and Margaretta, his wife, died seized, bounded, etc.," the proceedings thereon, the sale and the confirmation, and then grants and conveys the right and title of the parties to the proceedings " to the premises last above described."

Plaintiff claims that this description excludes the strip between the Perrine lot and the bay. We think not. The lands sold were the farm of which the Cripps died seized. This should be construed to pass the whole farm unless the boundaries subsequently mentioned necessarily exclude any

part of it.   The boundaries named are subject to criticism as to technical accuracy in either view that may be taken as to the extent of the grant.   But the inaccuracy is greater if we suppose the beach strip to be excluded.   In such case the ordinary and natural way would be to bound the premises on the east by lands of Perrine and the bay.   But the sole · easterly boundary given is the bay or narrows.   This boundary is correct if the beach strip is included, but incorrect if it be excluded.   The boundaries named, therefore, do not tend to limit the previous general description of the farm of which the Cripps died seized.   Hence, we think the defendants established their title to the upland.

We do not see how the question on which the plaintiff asked to go to the jury would have affected the result at which we have arrived.   If in 1807 the upland in front of the Perrine lot had entirely disappeared, when it was again restored the title of the former owner would attach.   Mulry *v.* Norton, 100 N. Y. 424.

Complaint is made as to the boundaries of the upland given in the judgment.   There was no request to submit this question to the jury.   The boundaries are those fixed by the map of the water grant to plaintiff's grantor, and their correctness is established by the evidence of the surveyor, Mr. Root.

The verdict directed was a general one in favor of the defendants.   The judgment entered thereon was not only for the recovery of upland, but declared that the grant from the state of the land under water was void.   Assuming that the grant to Cook was void in such sense that it might be attacked collaterally, as we believe to be the law, still the defendants were not in a position to attack it.

In an action of this character, if the plaintiff fails to prove possession, the defendants may have the complaint dismissed, but to have a judgment in their favor they must prove their own title.   The want of title in the plaintiff is not sufficient for that purpose.   The defendants having obtained no grant from the state of the lands under water, have no title to such lands.   The title still remains in the state.

The provisions of the judgment in this respect were unauthorized. The direction of a general verdict in favor of the defendants was probably erroneous for the same reasons. But no question of the kind seems to have been raised on the trial. After the refusal of the request for the direction of a general verdict in his favor, no request was made by plaintiff for a direction as to the land under water. We also think that the plaintiff had failed to prove such possession of the land under water as would warrant the maintenance of the action and that the complaint should have been dismissed as to such lands. As no exception raises the exact point as to defendant's lack of title to the land under water we do not feel compelled to reverse the judgment, and order a new trial upon that ground. The rights of all parties will be preserved by reversing the portion of the judgment relative to the lands under water and dismissing the complaint as to such lands.

The remainder of the judgment should be affirmed, without costs of this appeal to either party.

DYKMAN and PRATT, JJ., concur.

### NOTE ON " ACCRETIONS."

Accretions made by filling in by a tenant under a license belong to the riparian owner. Bohn *v.* Hatch, 39 N. Y. St. Rep. 404 ; Smith *v.* City of Rochester, 92 N. Y. 463 ; Chenango Bridge Co. *v.* Paige, 83 Id. 178 ; Seneca Nation *v.* Knight, 23 Id. 498.

Material deposited by plaintiff upon his lot for the purpose of making land was held, in Duryee *v.* Mayor, etc., 96 N. Y. 474, to become part of the realty and that he has the same right of action for an injury thereto as for a similar injury to the natural land.

The increase, in order to give a littoral proprietor title to land by accretion, must be by such imperceptible degrees that, though persons are able to perceive from time to time that the land has encroached upon the sea line, they could not perceive the progress at the time it was made. Mulry *v.* Norton, 100 N. Y. 424.

The ownership of lands may be lost by erosion or by submergence. Id. The first consists in a gradual eating away of the soil by the operation of currents or tides ; the other in its disappearance under the

Note on " Accretions."

water and the formation of a navigable body over it. Id.; Easthampton *v.* Kirk, 81 N. Y. 218. But it is not every disappearance of land by erosion or submergence that destroys the title of the true owner, or enables another to acquire it. Id. The erosion must be accompanied, in order to effect this result, by a transportation of the land beyond the owner's boundary. Id. The submergence, to effect this result, must be followed by such a lapse of time as will preclude the identity of the property from being established upon its reliction. Id. Land lost by submergence may be regained by reliction ; and its disappearance by erosion may be restored by accretion; in either case, the ownership, temporarily lost, will be regained. Id.

The people, when portions of the mainland have been gradually encroached upon by the ocean, so that navigable channels have been extended over it, succeed, by virtue of their sovereignty over public highways, to the control of such channels and the ownership of the land under them, in case of its permanent acquisition by the sea. Id. But its proprietorship returns to the original riparian owners, when the water disappears from the land, either by its gradual retirement therefrom, the elevation of the land by avulsion or accretion, or even the exclusion of the water by artificial means. Id. The lapse of time, during which the submergence continues, does not bar the right of the owner to enter upon such land and assert his proprietorship. Id.

The sovereign succeeds to the ownership of such islands and formations only as are originally created and located in tide-ways outside of the boundaries of property subject to individual ownership. Id.

The existence of a lagoon between the property of the riparian owner and the reclaimed land constitutes no obstruction to his ownership of the beach formation, if it is located within the original boundaries of his possession. Id.

The owner of contiguous uplands are entitled to lands made by accretion or reliction in front of their property and contiguous thereto in certain proportions according to the formation of their respective shore lines. Id. The right of one owner of uplands to follow and appropriate such accretions, however they may be commenced or continued, ceases when the formation passes laterally the line of his coterminous neighbor. Id.

The soil, which is by natural courses readily deposited in the water opposite upland and thus carries the water-line further out into the ocean or other public water, becomes attached to the upland, and the title of the upland owner is still extended to the water-line and the accretion becomes his property. Steers *v.* City of Brooklyn, 101 N. Y. 51 ; Langdon *v.* Mayor, etc., 93 Id. 129 ; Mulry *v.* Norton, 100 Id. 424 ; Ledyard *v.* Ten Eyck, 36 Barb. 102. In the case first above cited, the owner was allowed to consider, as an accretion to his premises, a pier wrongfully erected by the city in front thereof.

Where the water is diverted by artificial means, and not imperceptibly, from the land of a proprietor bounded by low-water mark, he acquires no title to the derelict bed of the stream. Halsey *v.* McCormick, 18 N. Y. 147. To acquire title to land as alluvion, it is necessary that its increase should

be imperceptible that the amount added in each moment of time should not be perceived. Id. When the change is so gradual as not to be perceived in any one moment of time, the proprietor, whose land on the bank of a river is thus increased, is entitled to the addition. Id.