PEOPLE *ex rel.* BLAKSLEE v. COMMISSIONERS OF LAND-OFFICE.

(*Supreme Court, General Term, Third Department.*   July 11, 1891.)

RIPARIAN RIGHTS—RESERVATION—VALIDITY.

Where a riparian owner conveyed lands down to high-water mark, and reserved to himself, his heirs and assigns, all the water-rights and privileges in the river opposite, the reservation was void, and inoperative to prevent a grant by the commissioners of the land-office of the land covered by the water opposite the conveyed premises, under 1 Rev. St. (7th Ed.) p. 573, § 67, which provides that "no such grant shall be made to any person other than the proprietors of the adjacent lands, and any such grant that shall be made to any other person shall be void."

*Certiorari* at the relation of E. G. Blakslee to review the action of the commissioners of the land-office in granting land under water in the Hudson river, near Sing Sing, to the E. L. Blakslee Manufacturing Company. On the 28th of February, 1889, the commissioners of the land-office, to whom application had before that time been regularly made, ordered that, upon the payment by the E. G. Blakslee Manufacturing Company to the treasurer of the state of New York of $2,017, letters patent for the beneficial enjoyment to the E. G. Blakslee Manufacturing Company be granted for the lands under water as applied for. The amount so ordered to be paid was paid into the treasury on the 18th day of March, 1889; and on that day, pursuant to the order of the commissioners of the land-office, a patent was issued in due form to the E. G. Blakslee Company for the land described in the petition.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Francis Larkin,* for relator.   *Charles F. Tabor,* Atty. Gen., (*Taylor & Parker,* of counsel,) for respondents.

MAYHAM, J.  The petitioner, Ebenezer G. Blakslee, and the appellant, the E. G. Blakslee Manufacturing Company, derive their claim of title through several conveyances, transfers, and reservations coming from Reuben Quimby, who was the original owner and common source of title.  The claim of the petitioner is based upon a title derived through a mortgage foreclosure, followed by several mesne conveyances of the land under water, based upon a reservation made by Quimby in his conveyance of the upland, the title to which comes to the applicant, the E. G. Blakslee Manufacturing Company, through several mesne conveyances from the same Quimby deed.  In that deed Quimby, the grantor, makes this reservation: "Excepting and reserving to said Quimby, his heirs and assigns, all the water-rights and privileges in the Hudson river, west of said railroad, which now do or hereafter may appear in or belong to the above-described premises, the same and in the same manner as if these presents had not been made."  By the conveyance of the title derived under the deed, the applicants became the riparian owners, and the petitioner, at the time of the grant of land to the applicant of this land under water by the commissioners of the land-office, which is attacked in this proceeding, was the owner and grantee of whatever right or title was contained in the reservation above referred to, in the Quimby deed.  If that reservation was invalid, and carried no right with it, then the purchaser of that right under a foreclosure, and his subsequent grantees, got no title or interest in the land under water; and the petitioner, who claims that right, would have no interest in the land under water conveyed to the applicant, and no standing in court to attack this grant.  So that the main question seems to be, did the reservation in the Quimby deed deprive the purchaser of the upland, or his assigns or grantees of the right of riparian owners to obtain this grant from the state, or did that reservation divest the state of the right or power to grant the land under water, opposite to these highlands, to the riparian owner?  The answer to these questions must be decisive of this case.  If Quimby, when he conveyed to Gregory and Mead, could make a valid exception and reservation, to himself and his successors, of the land under water lying along these uplands, then Gregory and Mead and their grantees got no right in the lands under water as an appurtenant to their grant, and the applicant who succeeds to their title could get no greater rights than were conveyed to, and belonged to, its grantor, and consequently no riparian rights to a grant of land under water passed to this applicant.  But this conclusion can only be reached upon the theory that a riparian owner has, before receiving any grant from the state, a right in the land under water which he may sever from the upland, and hold, not only as against the grantee of the upland, but also as against the state, in which all lands under waters of a navigable stream is vested.  The constitution vests in the commissioners of the land-office such authority and power over the public lands of the state as may be conferred on them by the legislature.  Section 5, art. 5, Const.  The powers and duties of such commissioners, as to land under navigable waters, are prescribed in section 1, c. 385, Laws 1850, (1. Rev. St., 7th Ed., p. 573, § 67,) as follows:  "The commissioners of the land-office shall have power to grant, in perpetuity or otherwise, so much of the land under the waters of navigable rivers and lakes as they shall deem necessary to promote the commerce of this state, or proper for the purpose of beneficial enjoyment of the same by the adjacent owner; but no such grant shall be made to any person other than the proprietors of the adjacent lands, and any such grant that shall be made to any other person shall be void."  The grant by Quimby conveyed the land above high-water mark, and reserved only the right to land under water, so that, after that conveyance, he or his grantees or mortgagees had no adjacent land, and were not, therefore, the proprietors of the adjacent lands, within the statute above referred to.  By the terms of the statute, any conveyance by the commissioners of the land-office, to him or his grantees or

mortgagees, would be void. If his reservation in his conveyance could have the effect of divesting the right of the state, through the commissioners of the land-office, of the power to grant adjacent lands under water to Gregory and Mead, Quimby's grantees, it would, in effect, deprive the state of the right to make a grant of this land under water, and thus defeat the very object contemplated and expressed in the statute,—the promotion of commerce of the state, or the beneficial enjoyment of the same by adjacent owners.

But it is insisted by the petitioner that this is not an open question, but has been settled by authority, and we are referred to the cases of *People* v. *Jones*, 112 N. Y. 597, 20 N. E. Rep. 577; *Benson* v. *Townsend*, 7 N. Y. Supp. 162. In *People* v. *Jones*, *supra*, which arose on *certiorari* to the action of the commissioner of land-office, the court, RUGER, C. J., says: "The undisputed evidence in the case shows that there was a strip of land situate between the lake and the premises embraced in the metes and bounds contained in the first deed." It is true that the learned judge in that case used language referring to the rights of riparian owners to limit the effect of their grant, so as to reserve the riparian privilege, and also subsequent accretions, which, if it had been used in a case like this, would seem to be conclusive; but, as it was used in a case where the grantee had acquired by his deed no riparian rights by reason of the existence of intervening lands between those conveyed and the lake, the language must be construed as applicable to the case under consideration by the court, and not to one standing upon an entirely different state of facts. It is true that, at the time Quimby purchased these lands, high-water mark was east of the railroad, and that, before making the conveyance to Gregory and Mead, he filled up on the east of the railroad, and made up-land of all east of the railroad, so that by his conveyance to them he bound them on the east line of the railroad; but it also appears from the case that at that time there was no upland west of the railroad, and that the applicant owned at the time of this application all the upland.

It also appears in the case that the only upland now existing west of the railroad, and between it and the river, is artificially made land, formed from the dumping of the refuse from applicant's furnace within the last two or three years, or by the petitioner's directions while he was foreman of the applicant's company. We are not, therefore, called upon to determine the rights of the petitioner, under the reservation in the Quimby deed as to any natural accretions to the upland; and the question remains, it seems to us, as to the boundary of the highlands, as they existed at the time of the execution of the Quimby deed. As the railroad was constructed in the river below high-water mark, it did not, it seems, become a riparian owner, nor in any way affect the rights of the former riparian owner, as to the right to a grant of land under water, under the statute. In *Rumsey* v. *Railroad Co.*, 114 N. Y. 423, 21 N. E. Rep. 1066, the court held that the railroad company whose track or road-bed was constructed below high-water mark was not a riparian owner, and that the railroad company was not the owner of the adjacent uplands, and that the railroad company had no capacity to acquire land for any purpose, except such as is defined in its charter, and could not take the statutory right of a riparian owner to acquire land under water. As the right of the railroad acquired under the laws of eminent domain gave the railroad company no right to acquire land under water, under chapter 385 of the Laws of 1850, the right of the riparian owner remains unimpaired, under that act, and leaves the question of the effect of the exception and reservation in the Quimby deed, as the real question in controversy under this *certiorari*. Assuming, as we do, that the case of *People* v. *Jones*, *supra*, is distinguishable from this case, as shown above, we are left to the determination of this question solely upon the effect of the exception and reservation. An exception in a grant takes or retains out of the grant a part of the thing granted. To make an exception valid, the grantor must own the thing granted as well as the

part excepted.   In this case, while Quimby, at the time of making the above conveyance to Gregory and Mead, was the owner of the upland, and could therefore make a valid conveyance of the same, he had .no title to the part excepted, and could acquire no interest in it by his exception.   A reservation must be of something belonging to the grantor, arising out of that which is granted; and as the title to this land under water was at the time of the Quimby grant in the state, and in no sense in Quimby, he had at that time no right or interest in it which could be reserved by him, especially as his deed of the highland rendered it impossible, under the statute above quoted, for the state to convey to him.   In *People* v. *Ferry Co.*, 68 N. Y. 76, the court says: "The ownership of adjacent uplands gave him [the owner] no title or interest in the lands under water in front of his premises."   The title to lands under navigable waters in this country, which, before the Revolution, was vested in the crown of England, became, upon the separation of the colonies, vested in the state within which they were situate, and became subject to the sovereign will of the people, who succeeded to the title of the king, and the legislature of the state became vested with the exercise of that sovereign power.   The state, in place of the crown, holds the title as a public trust, to be exercised through the constitutional acts of the legislature.   At common law, any deed of an individual granting land under water, or making an exclusive appropriation of the same not granted by the king, was void. *People* v. *Ferry Co., supra.*   In *Gould* v. *Railroad Co.*, 6 N. Y. 522, the court held that the owner of lands adjoining a navigable river has no .private right of property in lands of the river below high-water mark.   See, also, *In re New York, W. S. & B. Ry. Co.*, 29 Hun, 269, where this case is approved.   Under this rule, it is apparent that Quimby, while he held the title to the highland, could have conveyed no right to the adjacent land under water, by virtue of his riparian rights, because the title was in the state; and for the same reason it seems clear that, on a conveyance of his title to the highlands, he could make no valid reservation to himself or his grantees or mortgagees of such land. · If he could not, then his reservation in the deed was void, and no valid claim or right can be predicated upon it.   If the petitioner has no legal right to the land under water, he has no standing in court to resist the title of the applicant under the grant of the commissioners of the land-office, or to review the action of the commissioners.   The proceedings of the commissioners is confirmed, and the writ of *certiorari* quashed, with $50 costs and disbursements against the petitioner in favor of the respondent.   All concur.