In the Matter of the VILLAGE OF OLD FIELD et al., Appellants, v. CORTLANDT VAN R. SCHUYLER, as Commissioner of General Services of the State of New York, et al., Respondents.

Third Department, June 21, 1962.

*Whalen, McNamee, Creble & Nichols* (*Charles E. Nichols* of counsel), for appellants.

*Irving I. Waxman* and *William M. Smith* for Flax Pond Improvement & Realty Corp., respondent.

*Louis J. Lefkowitz, Attorney-General* (*Julius L. Sackman* and *Paxton Blair* of counsel), for Cortlandt Van R. Schuyler, respondent.

TAYLOR, J. The facts are not in dispute. The question of law presented on appeal is whether the board exceeded the powers conferred by subdivision 5 of section 3 of the Public Lands Law in granting, after notice and a hearing, a license to respondent corporation permitting it to dredge between the jetties of an artificial channel connecting Long Island Sound with Flax Pond, a 100-acre body of shallow water, and to a point in the sound 600 feet beyond their extremities to a depth of 12 feet below mean low water and to remove the sand, gravel and material found in deposit upon the public lands thereunder. The object to be attained by the dredging was to permit the entrance of a dredging barge to the pond for the purpose of deepening it for use by small craft as an adjunct to the residential development of 20 acres of beach land fronting on the sound for a distance of about 2,800 feet also owned by the corporation. The inlet was originally cut and the jetties erected by one Childs, its predecessor in title, pursuant to an easement granted by the State in 1942. His barge reached its destination but was destroyed by the hurricane of 1945 whereupon the operation was suspended and never resumed.

The sentence of the statute found by the court below to have empowered the board to issue the license was added by chapter 150 of the Laws of 1946 and reads in pertinent part as follows: " The board may, in its discretion and upon such terms and con-

ditions, including consideration, as to it shall seem just and proper, authorize the taking of soil from state land under water where such soil is to be taken by an upland owner bordering on state land under water for the improvement or the protection of his upland from the action of the water, or for the restoration, in whole or in part, of his upland where there has been sudden washing away and loss of soil thereof by violent storm and consequent avulsion, but where the title to his land has not been lost, the boundary line remaining the same.''

Special Term considered the pond to be upland, construed the statute as a grant of power to the board to issue a license for its improvement '' without any ' action of the water ' restriction '' and found a sufficient nexus between the acts authorized and the improvement to justify the action of the board. We are constrained to disagree with this view of the Legislature's intent. A literal reading of the quoted portion of the statute, its contextual arrangement, the pre-existing regulatory law in the field involved and the storms of hurricane velocity in the year preceding the enactment as a factor giving rise to the legislation — all sound aids for understanding its meaning (3 Sutherland, Statutory Construction [3d ed.], § 6007) — evince the Legislature's purpose only to permit the authority vested in the board to be exercised in respect to the taking of soil from State land under water in Long Island Sound by an upland proprietor for the improvement or protection of his property where necessary to remedy or prevent shoreline erosion arising '' from the action of the water '' or to restore the soil of his upland washed away by violent storm and consequent avulsion. In communications to the Governor from the board, the Attorney-General and the Division of the Budget found in the legislative bill jacket urging approval of the amendment — apparently not made available to Special Term — we have evidence of similar legislative intent. The board's own implementing rule which states: '' Any such permit shall relate only to the taking of soil·or material as provided in said act, and any soil or material so to be excavated is intended to be used primarily for the filling in of the upland for the purposes provided in the act, and is not to be used for the improvement of the upland in any other respect '' supports the same conclusion (Rules of Office of General Services; 9 N Y C R R 272.1). When the statute is viewed in accordance with its purpose and spirit it becomes evident that in issuing the dredging license the board exceeded its statutory authority.

Respondents urged in the court below three jurisdictional contentions: (1) that the determination of the board is legislative

in character and not subject to judicial review; (2) that petitioners are not aggrieved parties and have no standing to institute the proceeding and (3) that adequate remedies at law are available. We find, as did Special Term, such arguments to be without merit.

Appellants do not question the board's right to exercise its discretion in granting or refusing a license to a qualified applicant for a purpose encompassed by the statute. They urge only that the board acted in excess of the authority granted it by the Legislature. In these circumstances certiorari lies to review the determination. (*People ex rel. Burnham* v. *Jones,* 112 N. Y. 597; *People ex rel. Schick* v. *Marvin,* 249 App. Div. 293, 296, affd. 275 N. Y. 587; *Matter of Guardian Life Ins. Co.* v. *Bohlinger,* 308 N. Y. 174, 183, motion for reargument denied 308 N. Y. 810.)

Two petitioners are municipal corporations within whose confines the premises owned by respondent corporation are located; one of them has by perpetual easement public clamming rights in Flax Pond; the third petitioner is an adjoining property owner. All were given notice of the application; each appeared as a remonstrant at the hearing conducted by the board and participated fully in the proceeding by argument, the presentation of evidence in chief and the cross-examination of adverse witnesses obviously with the permission, consent and implied invitation of the board. Thus they became parties to the proceeding in a real sense entitled to review an adverse determination as parties aggrieved thereby. (*People ex rel. Burnham* v. *Jones, supra*; *Matter of Bullis* v. *Du Mond,* 274 App. Div. 951; *People ex rel. New York Edison Co.* v. *Willcox,* 207 N. Y. 86.) In any event if for no other reason the individual petitioner as proprietor of the adjacent land had standing to maintain the proceeding. (*People ex rel. Blakslee* v. *Commissioners of Land Office,* 135 N. Y. 447.)

The suggested available plenary remedies, i.e., an action for a declaratory judgment pursuant to section 473 of the Civil Practice Act with incidental injunctive relief and an action to enjoin the destruction of petitioners' alleged rights in the property involved herein are neither designed nor well adapted to reach this kind of controversy.

The order should be reversed on the law and the facts and determination annulled, without costs.

BERGAN, P. J., COON, GIBSON and HERLIHY, JJ., concur.

Order reversed on the law and the facts and determination annulled, without costs.