Daniel C. Case, Respondent, *v.* Wealthy Dexter et al., Appellants.

A deed described the premises conveyed as "known by being lot No. 3 * * * lying southerly or south-easterly of Fish Lake * * * commonly called the Fish Lake lot, supposed to contain sixty-seven acres of land." Lot 3 contains about six hundred acres, all of which, except about sixty-seven acres lying south of the lake and about seven acres north of it, are covered by the lake. In an action of trespass, wherein the *locus in quo* was the seven acres, to which defendant claimed title under the deed, *held*, that the deed did not cover the seven acres; that the reference to the land intended to be conveyed as "lot 3" was a mistaken or false.

Plaintiff offered to prove that the land south of the lake was known by common repute as the "Fish Lake lot." This was objected to and rejected. *Held*, that if there was any doubt on the proof, as it stood, as to the intention of the parties the rejection of this evidence was error.

Rules as to construing descriptive words in a deed where the particulars are inconsistent, stated.

(Argued June 15, 1887; decided October 4, 1887.)

Appeal from order of the General Term of the Supreme Court, in the fourth judicial department, made January 13, 1885, which reversed a judgment in favor of defendants entered upon a verdict.

This was an action of trespass. The material facts are stated in the opinion.

*S. N. Dada* for appellants. Actual occupancy of a part of a lot under a paper title covering the whole lot, makes constructive possession of the remainder of the lot. (*Edwards* v.

*Noyes*, 65 N. Y. 125; *Bliss* v. *Johnson*, 94 id. 242; *Thompson* v. *Burhans*, 79 id. 97, 99; *Doe* v. *Thompson*, 5 Cow. 371; *Hammond* v. *Zehner*, 23 Barb. 473; Bigelow on Torts, 167; Code of Civ. Pro. § 369; 3 R. S. [7th ed.] 2205, § 2; *Coleman* v. *Beach*, 97 N. Y. 547; *Bennett* v. *Culver*, id. 250; *Rosebloom* v. *Rosebloom*, 51 id. 356, 359; *Freeman* v. *Coit*, 96 id. 63, 68; *Byrnes* v. *Stillwell*, 103 id. 453, 460; *Thornhill* v. *Hall*, 2 Cl. & Fin. 22.) In a description that which is certain controls what is uncertain. (Gould on Waters, 343; *Masten* v. *Olcott*, 101 N. Y. 152; *Beardsley* v. *Hotchkiss*, 96 id. 212; *Connolly* v. *Vernon*, 5 East, 51; *Church* v. *Kemble*, 5 Sim. 525; *Parkin* v. *Parkin*, 5 Taunt. 321; *Ryall* v. *Bell*, 8 T. R. 579; *Holmes* v. *Hubbard*, 60 N. Y. 183.) When a deed contains an express reference to another instrument or writing clearly identified, and intended to be resorted to for completeness of description or understanding, it will be taken as an integral part of the deed, and be construed with it. (8 Shepl. 69; 6 Pick. 460; 1 N. & McC. 381; 20 Pick. 121; Gould on Waters, § 194; 3 Sumn. 170; 3 Kerr, 242; 1 Shepl. 329; McCall on R. Prop. § 65; 4 Cruise's Dig. 326; Moor, 679; 8 T. R. 483; Stark. R. 130, 162; 14 East, 598; 5 Pick. 181; 3 Bebb. 10; 93 N. Y. 507.) Defendants' conclusion as to the intent expressed in the description in defendants' title deeds is sustained by the subsequent acts and conduct of the parties to the deeds. (*Reading* v. *Gray*, 37 Super. Ct. 79; Add. on Con., 182, *n.*; *L. V. & N. Co.* v. *Harlow*, 3 Casey, 439; *Hathaway* v. *Power*, 6 Hill, 453; 4 Cruise's R. E., 344, § 60.) A conveyance by name and number is as good as by metes and bounds. (*Stanley* v. *Green*, 12 Cal. 148; *Foss* v. *Crisp*, 20 Pick. 121; *Bower* v. *Earl*, 18 Mich. 367.) Statements of quantity do not govern. Title passes to all land embraced in the formal description. (*Mann* v. *Pierson*, 2 John. 471; *Jackson* v. *McConnell*, 19 Wend. 175; McCall on R. Prop. § 61; *Palmer* v. *Dodd*, 8 West. R. 797; *Powell* v. *Clark*, 5 Mass. 355.) The plaintiff failed to make out adverse possession by himself of that part of lot 3 on the north side of the lake. (2 R. S. 94; Code of Civ. Pro., §

370; *Paige* v. *Warring*, 25 W. D. 36; Gerard on Tit. 641.) The interpretation as well as the construction of a written instrument is for the court and not for the jury. (1 Greenl. Ev., § 277 and *n.* 2; *Groat* v. *Gile*, 51 N. Y. 431; *St. Luke's Home* v. *Ass'n.*, 52 id. 191; *Glacius* v. *Black*, 67 id. 563; *A. F. I. Co.* v. *Austin*, 69 id. 370; *Miller* v. *Dunlap*, 5 West. R. 91 [Mo.]; *Coding* v. *Wood*, 2 Cent. R. 838 [Pa.]; *Shoemaker* v. *Chappell*, id. 556.) It was proper, within the rule of *res gestæ*, to show that Onderkirk, defendant's grantor, while occupying lot 3, under a paper title, claimed to own Peperidge Point, and to show the character and intention of his possession. (*Abeel* v. *Van Gelder*, 36 N. Y. 513; *Botsford* v. *Darling*, 44 id. 666; *Smith* v. *McNamara*, 4 Lans. 169; Abb. Trial Ev. 154, subds. 1, 2, 3, 4, p. 711.) The legal effect of a conveyance is determined by the terms employed, and cannot be controlled by parol testimony, unless there is a latent ambiguity, or the description is rejected as false, or the identical boundary, referred to in the conveyance, is in dispute. (Gould on Waters, 344, § 195.) The words "part of" cannot be inserted before the words "Lot No. 3" in order to furnish a different antecedent to which the clause "lying southerly or south-easterly," etc., might refer and thus give effect to such clause. (*Holcomb* v. *Munn*, 5 Cent. R. 402; *Drake* v. *Seaman*, 94 N. Y. 230; 54 id. 253; 61 id. 591; 87 id. 69; Add. on Cont. 165; *Shore* v. *Wilson*, 9 C. & F. 565.)

*Giles S. Piper* for respondent. The deeds under which the defendant, Wealthy Dexter, claims title do not, as a matter of law, convey that portion of lot No. 3, lying on the north side of the lake, and the plaintiff was entitled to a verdict under the evidence. (*Van Wyck* v. *Wright*, 18 Wend. 157; *Baldwin* v. *Brown*, 16 N. Y. 361; *Brookman* v. *Kurzman*, 94 id. 272; *Ousby* v. *Jones*, 73 id. 621.) The words "commonly called the Fish Lake lot," were controlling, descriptive words. (*Masten* v. *Olcott*, 101 N. Y. 158; 3 Wash. on Real Estate [4th ed.], 402.) The enclosure of the premises was

sufficient to create title by adverse possession. (*Becker* v. *Van Valkenburgh*, 29 Barb. 319; *Jackson* v. *Halstead*, 5 Cow. 220, 221; *Crary* v. *Goodman*, 22 N. Y. 170, 175; *Thurman* v. *Cameron*, 24 Wend. 87; *Sands* v. *Hughes*, 53 N. Y. 287; *Christie* v. *Gage*, 71 id. 189; *Dawley* v. *Brown*, 79 id. 390; *Argotsinger* v. *Vines*, 82 id. 308.) The plaintiff was entitled to have had the case submitted to the jury upon the whole case as it stood. (*Trustees* v. *Kirk*, 84 N. Y. 215; *First Nat. Bk.* v. *Dana*, 79 id. 108; *Stone* v. *Fowler*, 47 id. 566; *Clemence* v. *Auburn*, 66 id. 334.)

ANDREWS, J. The case, as presented, raises the single question whether the defendant, Wealthy Dexter, in February, 1882, when the alleged trespass was committed, was the owner of the *locus in quo*, a parcel of land containing about seven acres, lying on the northerly side of Fish Lake, in the town of Granby, Oswego county, being part of lot 3 of the original township of Lysander. Her title to the premises, if any, is derived through intermediate conveyances from one John L. Norton and others, who, on the 1st day of November, 1839, conveyed to Richard Smith certain premises described in said deed as "all that certain piece or parcel of land situate, lying and being in the town of Granby, in the county of Oswego, known by being lot number three (3) in the original township of Lysander, lying southerly or south-easterly of Fish lake, in Granby aforesaid, and commonly called the Fish Lake lot, supposed to contain sixty-seven acres of land." The plaintiff claims title to the seven acres, under a deed from Asa Phillips and wife to Bradford Kennedy and Abraham Howe, dated January 24, 1862, which purported to convey to the grantees "all that part of lot three in the original township of Lysander (now Granby), lying on the northerly side of Fish lake and adjoining lot seventy-five of the original township of Hannibal." It is inferable from the evidence that at the time of this conveyance the grantees owned a tract of land on lot seventy-five, Hannibal, which, together with the land embraced in the deed from Phillips,

was subsequently, in the year 1877, conveyed to the plaintiff.
It does not appear that there has ever been any actual posses-
sion of the land on lot three, Lysander, lying north of Fish
lake, under the Norton title. The defendants proved that, in
or about 1854, James Ouderkirk, one of the intermediate
grantees under that title, went upon the land and cut sticks
for "ox bows," and again, in 1862 or 1863, and "looked
around;" that he asserted to various persons, at different times,
that he owned the land, and that, in 1878, the defendant, John
Ouderkirk, got "sassafras" on the land. But these, and a
few similar circumstances proved, fall far short of showing
actual possession of the land north of the lake by the defend-
ant Wealthy Dexter or her grantors. It is, on the contrary,
substantially undisputed that, from 1862, Kennedy and
Howe and their grantees have been in the actual possession
and occupation of the seven acres, using it in connec-
tion with lands on lot 75, Hannibal, for pasturage and other
farming purposes. The only actual possession under the
Norton title has been of the part of lot 3, lying south of Fish
lake, which, as the map approximately shows, and as the
plaintiff offered to prove, contained about sixty-seven acres
of land. Lot 3 contains 600 acres of land, all of which is
covered by Fish lake, except the sixty-seven acres lying south,
and about seven acres, in controversy, lying north of the lake.
Neither party traces title to the State.

The case was tried on the theory that the rights of the par-
ties turned upon the questions, first, whether the seven acres
on the north side of the lake were included in the Norton
deed; and, second, whether the deed to the defendant,
Wealthy Dexter, was void for champerty. If the first ques-
tion is decided adversely to the defendants, the consideration
of the second will become unnecessary. The defendants
rest their claim of title under the Norton deed upon the
proposition that as that deed includes, in its descriptive words,
"all that piece or parcel of land known as being lot No. 3,"
and as it is undisputed that the seven acres are within the
boundaries of that lot as laid out and surveyed, it is a neces-

sary conclusion that the deed conveyed the premises in controversy. It will be observed that this construction ignores all the subsequent descriptive words in the conveyance. It disregards the words in the deed locating the land conveyed as situated " on the southerly side of Fish Lake," and also the words describing the quantity of land "supposed to contain sixty-seven acres of land," and the further description " commonly called the Fish Lake lot," which the plaintiff offered to show, was understood as designating the sixty-seven acres lying south of the lake. All these particulars, upon the construction insisted upon by the defendants, are to be rejected as false, being inconsistent with the primary words of description, which include the whole of lot 3. The statement of the supposed quantity, it is insisted, is to be treated as a mistake, and it is assumed that the grantors intended to convey a tract of 600 acres (including the part covered by the lake), instead of a tract of sixty-seven acres, as expressed in the deed.

We think the contention of the defendants is obviously untenable. In construing the language of a written instrument the whole is to be considered in order to ascertain its true meaning and intention. This is as true in respect to the descriptive words in a deed as of any other part of the instrument. Where there is obscurity or uncertainty, all of the particulars in the description are to be taken into account in arriving at the intention, and in the deed in question the particulars describing the location of the land, the quantity, and its commonly known designation, are as much a part of the description of the subject of the conveyance as is the designation of the lot number. It is a familiar rule, in the construction of a deed, that where the description is ambiguous, or there is inconsistency in the several particulars, "words, if necessary, may be supplied by intendment, and particular clauses and provisions qualified, transposed or rejected, in order to ascertain and give effect to the intention." (BEARDSLEY, J., in *Hathaway* v. *Power*, 6 Hill, 453, 455.) What words or clauses shall be

rejected or qualified in case of uncertainty, is frequently determined by giving effect to those parts or clauses of the description, which are most certain and to particulars in respect of which the parties would be least likely to have made a mistake. For this reason, by the general rule of construction, monuments control courses and distances, and estimates of quantity are usually subordinated to both. (*Baldwin* v. *Brown*, 16 N. Y. 359.) The rule that fixed monuments, whether natural or artificial, should usually be given preponderating weight, is obviously reasonable. Variance between actual and estimated quantity of land is not usually a material circumstance, but it may in some cases be an important element in determining the intention of the parties to the grant. In the present case there are very significant circumstances showing that it could not have been the intention of the parties to the Norton deed to convey lot 3 as an entirety. The lines of the lot, if originally indicated by monuments or marked lines, may have been lost or obliterated. The description of the land conveyed as lying " southerly or south-easterly of Fish lake " refers to a natural monument or physical situation which was ascertainable by view. The estimated or " supposed " quantity, sixty-seven acres, is so disproportionate to the quantity contained in the whole of lot 3, that it would have at once arrested the attention of the parties if the conveyance of the whole lot had been intended. We have no hesitation in reaching the conclusion that the part of the description referring to the land intended to be conveyed as " Lot 3 " is mistaken or false. It is much more consistent to suppose that the words " on," or " part of," were omitted by inadvertence, than that the parties inserted the other parts of the description by mistake. And if there was any doubt, upon the proof as it stands, of the intention of the parties, the court erred in rejecting evidence of what was known by common reputation as " Fish Lake Lot." This is not the case of cutting down an interest or estate once clearly given, by subsequent indefinite or ambiguous language. All the language in the deed, to which we have referred, is a part

of a single description, and the sole question is, what land is embraced therein. In the view taken the question whether the plaintiff has acquired title by adverse possession, if without title otherwise, is unimportant.

We think the order for a new trial was properly granted, and it should, therefore, be affirmed and judgment absolute be directed for the plaintiff upon the defendants' stipulation.

All concur.

Order affirmed, and judgment accordingly.