### ROCHESTER ELECTRIC LIGHT CO. *v.* ROCHESTER POWER CO.

*(Supreme Court, General Term, Fifth Department.*   June, 1891.)

1. EASEMENTS—IMPLICATION FROM GRANT.

In 1866, A. conveyed to B. a strip of land 10 feet wide on the north side of his lot, and an interest in a line of shafting crossing the strip, together with a right to B. and his assigns to connect with the shaft and use the power to the extent of such interest, in such manner as they might desire, in consideration of a grant from B. allowing the shaft to pass over his lots on either side of A.'s lot. In 1890, the grantee of B. brought an action to restrain A.'s grantee from laying a new line of shafting over the 10-foot strip. *Held,* that B.'s grant to A. of the right to maintain and operate the shaft across B.'s lots on either side of A.'s lot necessarily carried with it the right to maintain and operate the shaft across the 10-foot strip conveyed to him by A. in the same deed.

2. SAME—RESERVATION IN GRANT.

In such case, a provision in A.'s deed conveying the 10-foot strip to B., with a portion of the power "created by the shaft running or to run through said lot, * * * and the water-wheel connected therewith, as now owned and used, or as the same shall be owned and used by the parties of the first part, their heirs and assigns," was an express recognition of the right of the grantor, and his successors in title, to maintain and operate the shaft as it then existed, or as it might thereafter be altered or renewed, through such lot.

3. ADVERSE POSSESSION—EASEMENT.

The grantee of A., and those through whom such grantee claims, having maintained and operated the shaft in question for a period of more than 20 years, acquired by prescription the right to construct, operate, and renew the same from time to time across the 10-foot strip in controversy.

Appeal from special term, Monroe county.

Action by the Rochester Electric Light Company against the Rochester Power Company. From a judgment for defendant, plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER, J.

*M. H. Cooke,* for appellant. *D. Hayes,* for respondent.

DWIGHT, P. J. In 1865, William H. Ward and James M. Whitney were severally the owners of several lots lying consecutively along the river front on the east bank of the Genesee river, at Rochester. Ward's lots lay to the south of those of Whitney, except that one lot of the former (lot B) was interposed between two lots of the latter, and that one other of Ward's lots (lot 16) lay north of all the lots of Whitney. On the lot last-mentioned Ward had water-power which he desired to transmit to his lots on the south, and he agreed with Whitney for the right to lay a line of shafting, for that purpose, through all the lots of the latter, in consideration of which he was to convey to Whitney a strip of 10 feet in width, off from the north side of his lot B, and was to grant to him the use of one-twentieth of all the power transmitted by the shaft. Under this arrangement, while yet resting in parol, and acting upon the advice as well as the consent of Whitney, Ward went on at great expense to construct and put in operation his line of shafting, traversing the entire series of lots of himself and Whitney, and the latter at once availed himself of the right to use one-twentieth of the power furnished thereby. In

the following year (1866) the two parties and their wives executed and delivered each to the other a mutual deed, drawn by Mr. Ward, who was not a lawyer, by which Ward and wife, as parties of the first part, conveyed to Whitney, by proper description, the 10 feet of lot B, above mentioned, and "also the undivided one-twentieth part of all the power from time to time created by the shaft running or to run through said lot B, and the water-wheel connected therewith, as now owned and used, or as the same shall be owned and used by the parties of the first part, their heirs and assigns, with the right to the said James M. Whitney, his heirs and assigns, to connect with said shaft, and to use said power to the extent aforesaid, in such manner and for such purposes as he, his heirs and assigns, shall desire." And by the same deed Whitney and wife, as parties of the second part, conveyed to Ward and his heirs and assigns "the right to pass over and through lots A, 18, C, and D, of the Atwater and Andrews tract, on Water street, in the city of Rochester aforesaid, a shaft or shafts of suitable size and material, to be used in connection with water or other power to propel machinery in or upon the premises of the said William H. Ward or Ward & Bro., now owned by him or them, or which he or they may hereafter own on said Water street or vicinity, or for any other purposes; provided that such shaft or shafts be so constructed, used, and maintained in the most approved manner, and so as not to unnecessarily interfere with the free use of said lots A, 18, C, and D, together with the privilege of entering upon said lots when necessary for the purpose of altering, repairing, or renewing said shaft or shafts, doing no unnecessary damage." The deed contained mutual covenants of warranty of all the premises and rights there severally conveyed. The lots A, 18, C, and D, specifically mentioned in the above grant of the easement—from Whitney to Ward, were all the lots, or parts of lots, then owned by the former which lay between Ward's power on lot 16 and the property of the latter to which that power was to be conveyed. By this action the plaintiff, a grantee of Whitney, seeks to contest the right of the defendant, a grantee of Ward, to maintain the shaft across the strip of 10 feet off the north side of lot B, conveyed by Ward to Whitney by the same deed by which the easement for the shaft was conveyed by Whitney to Ward. From the time when the shaft was laid, under the parol arrangement, in 1865, it was maintained by Ward and his grantees without interference or question on the part of Whitney or his grantees until the year 1890. In that year the plaintiff, having occasion to rebuild its power-house on lot 16, and desiring to renew its line of shafting, which had been in use for 25 years, took up the old iron shaft, and was about to lay one of steel in its place, when this action was commenced to restrain the defendant from laying the new shaft over the 10 feet of land above mentioned. We regard the contention of the plaintiff as utterly untenable.

The trial court made the following, among other findings, upon ample, and mainly unquestioned, evidence: "(5) That a shaft could not be constructed and operated from the water-power on lot 16, over and across lots A, 18, C, and D, unless the same was also constructed and operated across the whole of lot B, including that part which was conveyed to Whitney by the deed aforesaid, as it existed when said deed was made. (6) That it was the purpose and intention of said Ward and said Whitney at the time of making said deed of September 7, 1866, that said Ward should have the right to maintain and operate a shaft across that portion of lot B conveyed to Whitney, as he was then doing, and that without that right the said grant from Whitney to Ward would have been ineffectual. (7) That said Ward, in erecting said shaft, and the machinery to produce the power to operate the same, expended a large amount of money, and that said expenditure was made upon the suggestion of said Whitney, and by his advice." "(10) That from the year 1865, when said parol arrangement was first made, as aforesaid, the said shaft was continuously maintained and used by said Ward and his successors in the title to the said land, under a claim of right adversely to the rights of said Whitney

.and his successors, the said Ward claiming said right under said parol arrangement, and afterwards under said deed of September 7, 1866; that the right of said Ward to maintain and use said shaft as so claimed was conceded by said Whitney; and that the use of said shaft by said Ward was exclusive, uninterrupted, open, notorious, and with the knowledge of said Whitney, and his successors in title, until the month of September, 1890." Upon these findings, and others which embrace the facts less formally stated in the opening of this opinion, we regard the following conclusions of law of the trial court as well based and well supported by the authorities cited in the opinion at special term, viz: "(1) That the grant by said Whitney to said Ward of the right to construct, maintain, and operate the said shaft across lots A, 18, C, and D necessarily carried with it the right to construct, maintain, and operate said shaft across the north ten feet of lot B, as an incident of said grant, and without which the same would have been ineffectual. (2) That the said defendant has acquired by prescription the right to construct, operate, and renew, from time to time, the said shaft across the north ten feet of lot B, as the same had existed for twenty years." We are also inclined to go further, and hold that while the easement, contended for by the defendant, over the 10 feet of lot B, was not expressly included in the grant from Whitney to Ward, in the deed between the parties, yet that it was expressly reserved in the grant from Ward to Whitney contained in the same deed. The omission of any reference to lot B in the grant from Whitney to Ward may well be accounted for by the fact that, when the deed was drawn and executed, Whitney had no title to any portion of that lot, and that he acquired title to a portion of it only when the deed was afterwards delivered. But in the grant from Ward to Whitney we find these words: "Also the undivided one-twentieth part of all the power from time to time created by the shaft running or to run through said lot B, * * * as now owned and used, or as the same shall be owned and used, by the parties of the first part, their heirs and assigns." Here was, at least, an express recognition, in the mutual deed between the parties, of the right of Ward and his successors in title to maintain and operate the shaft as it then existed, or as it might thereafter be altered or renewed, through lot B, and the whole of such lot. If this may not be denominated an "express reservation" of the easement contended for by the defendant, it certainly reserved that easement by necessary implication. In reaching that conclusion we are not confined to the force of the words alone, employed in the clause of the deed just now under consideration. We have a right to consider, in that connection, the whole scope and purpose of the deed, and the manifest intention of the parties in its execution. *Case* v. *Dexter*, 106 N. Y. 548, 553, 13 N. E. Rep. 449; *Sanders* v. *Townshend*, 89 N. Y. 623. So construed, we can have no doubt that the true force and effect of the grant from Ward to Whitney was to reserve the easement for the shaft of the former in the 10 feet of land conveyed to the latter. The judgment appealed from adjudged that easement in the defendant, denied to the plaintiff the relief of an injunction against the exercise of that right, and enjoined the plaintiff from interference therewith. That judgment must be affirmed.