■ HIBISCUS HARBOR, INC., Appellant, v JAMES EBERSOLD et al., Respondents.—Judgment unanimously reversed, on the law and facts, without costs, complaint reinstated, plaintiff awarded record title, and case remitted for trial on issues of adverse possession in accordance with the following memorandum: Plaintiff brought this action under article 15 of the Real Property Actions and Proceedings Law seeking a judgment barring defendants from claiming an estate in lands conveyed to plaintiff in 1960. Defendants include the State and 35 owners of cottages situated on a narrow strip of land along Cayuga Lake known as "Canoga Island". It is clear that there has always been above-water level connecting ground between the high land and the so-called "Canoga Island", and it is more accurate to describe the latter as a peninsula paralleling the west bank, with marshland between the peninsula and the bank. The peninsula, therefore, has been part of the west shoreline of Cayuga Lake. The grants under which plaintiff claims title to approximately 75 acres of marshland and "Canoga Island" were made by the State in 1813 to Michael Vreeland and Daniel Blackney. The Vreeland grant conveyed Lot No. two of a tract "commonly known by the name of the Canoga reservation on the west side of the Cayuga Lake." Reference was made in the letters patent to the fact that the "lot is bounded and described in a field book and map", certified copies of which were introduced in evidence. The description of Lot No. two concluded with "thence south eighty two degrees thirty minutes east seven chains and fifty links to the Marsh near the Lake shore, and thence northerly along the Lake to the place of beginning, containing two hundred acres" (emphasis added). The

Blackney grant conveyed Lot No. four of the Canoga Reservation, and also referred to the field book and map of the reservation. The description of Lot No. four concluded with: "thence south eighty two degrees thirty minutes east seven chains and fifty links *to the marsh on the Lake Shore and thence southerly along the Lake Lake [sic] Shore* to the place of beginning CONTAINING two hundred acres." (Emphasis supplied.) The map of the Canoga Reservation shows that Lots Nos. two and four are contiguous irregular parcels with Lot No. two located to the north of Lot No. four. All of the lot lines running in an easterly direction are shown as extending through a narrow strip of lakeside marshland to Cayuga Lake. Within the band of marshland is shown a narrow unnamed peninsula running northerly along the western edge of the lake from Lot No. four to Lot No. two. This peninsula is now known as "Canoga Island" and the map indicates that it was marshland. The record shows that this peninsula is approximately 1,870 feet long and varies from 45 to 160 feet in width. It is only several feet above the water level of Cayuga Lake during times of high water, and during such periods the southern portion is inundated. The marshland to the west varies from 550 to 950 feet in width. The surveyor for the State testified that the marshland elevation was approximately one-half foot above the water level of Cayuga Lake at the time of his 1968 survey. Charles Amidon, the man who built the first cottage on the peninsula in 1910, testified that there were times when the water line was east of it. The proof established that during certain portions of the year the marshland was inundated, while at other times, there was no water in the marsh and it could be traversed on foot. The trial court found that the 1968 survey conducted by the State according to the metes and bounds description of the letters patent placed the eastern boundary of plaintiff's land at the top of banks which bordered on the western edge of the marshland. This survey attributed 242.7 acres to Lot No. two and 187.8 to Lot No. four. "By the general rule of construction, monuments control courses and distances, and estimates of quantity are usually subordinated to both" *(County of Erie v Bourne,* 59 AD2d 1008, citing *Case v Dexter,* 106 NY 548, 554). Here, the original grants describe the eastern boundary of Lots Nos. two and four as running along the lake and along the lake shore respectively. Therefore, the metes and bounds descriptions as well as the acreage estimates must yield to the natural boundary of the lake. Furthermore, the descriptions contained in the letters patent, by running to the lakeshore, carried the boundaries to the low-water mark of Cayuga Lake (see *Stewart v Turney,* 237 NY 117, 130-131; *Snow v State of New York,* 48 AD2d 582). Absent proof that "Canoga Island" has not always been a peninsula (at least since 1813), plaintiff's title runs to the low-water level on the eastern shore of the peninsula. Thus, plaintiff owns the peninsula and the marshland to the west of it, subject only to rights gained therein through adverse possession. (Appeal from judgment of Seneca Supreme Court—Real Property Actions and Proceedings Law, art 15.) Present—Marsh, P. J., Moule, Simons, Hancock, Jr., and Witmer, JJ. [89 Misc 2d 498.]