■ JEANETTE L. MILLER et al., Appellants, v TIMOTHY POWERS et al., Respondents. [862 NYS2d 242]—

Appeal from a judgment (denominated order) of the Supreme Court, Cayuga County (Peter E. Corning, A.J.), entered January 22, 2007. The judgment following a nonjury trial, inter alia,

declared that defendants may exercise their riparian rights to Cayuga Lake from a certain parcel owned by plaintiffs and that the boundary between plaintiffs' parcel and defendants' parcel is 30 feet easterly of the centerline of the former railroad bed.

It is hereby ordered that the judgment so appealed from is unanimously modified on the law by vacating the last decretal paragraph and granting judgment in favor of plaintiffs as follows:

"It is ORDERED, ADJUDGED and DECREED that the boundary between plaintiffs' parcel and defendants' parcel runs along the fence line depicted as the railroad right-of-way fence that runs along the top of the bluff in the survey maps of George Schlecht, dated April 16, 1981 and filed April 30, 1981 in the Cayuga County Clerk's Office, as Maps 81-64, 81-126, 81-180 and 81-203 and as modified the judgment is affirmed without costs."

Memorandum: Plaintiffs commenced this action seeking, inter alia, judgment declaring that the boundary line between the respective parcels of the parties "runs along the line of the Railroad Fence" and that defendants do not have riparian rights to Cayuga Lake. In the alternative, they sought judgment declaring that defendants may not utilize one of the two parcels owned by plaintiffs, known as "parcel A," to access their riparian rights to Cayuga Lake. The two parcels are adjacent to the eastern shore of Cayuga Lake, and defendants own a parcel located to the east of plaintiffs' parcels, which the parties identify as the "upland parcel." We note, however, that the term "upland parcel" is a misnomer because such land runs along a navigable body of water (*see generally Town of Oyster Bay v Commander Oil Corp.*, 96 NY2d 566, 571 n 1 [2001]), and defendants' parcel is not located along Cayuga Lake. Plaintiffs appeal from a judgment entered following a bench trial that, inter alia, declared that defendants may exercise their riparian rights to Cayuga Lake from parcel A, and that the boundary between the respective parcels of the parties is 30 feet easterly of the centerline of the former railroad bed.

In 1872, Jason and Mary Atwater, defendants' predecessors in interest at that time, conveyed a strip of land along Cayuga Lake to the Cayuga Lake Railroad Company, plaintiffs' predecessor in interest. The issue whether the owner of the "upland parcel" had riparian rights to the lake after the conveyance to the railroad was previously litigated by defendants' predecessor in interest, Claude L. Pyle, and plaintiffs' predecessor in interest, Thomas G. Miller, the husband and father, respectively, of the plaintiffs herein. We affirmed the order in that action in

which Supreme Court (Boehm, J.) determined, inter alia, that Claude Pyle had riparian rights that were accessible from parcel A (*Pyle v Estate of Miller*, 163 AD2d 820 [1990]). Thomas Miller died during the pendency of that appeal, and leave to appeal our order to the Court of Appeals was not sought. Although plaintiffs contend on appeal that our decision in *Pyle* that the "upland owner" has riparian rights was erroneous, they failed to raise that contention at the nonjury trial in this action and thus failed to preserve it for our review (*see Ciesinski v Town of Aurora*, 202 AD2d 984 [1994]). In any event, even assuming, arguendo, that plaintiffs had preserved their contention for our review, we would conclude that the contention is barred by the doctrine of res judicata. The decision of this Court addresses the merits of that contention, and the interests of the plaintiffs herein " 'can be said to have been represented in the prior proceeding' " (*Tuper v Tuper*, 34 AD3d 1280, 1282 [2006]; *see generally Matter of Hunter*, 4 NY3d 260, 269 [2005]). We therefore affirm that part of the judgment on appeal determining that defendants may exercise their riparian rights from parcel A.

We agree with plaintiffs, however, that Supreme Court erred in declaring that the eastern boundary of parcel A is 30 feet from the centerline of the former railroad bed, which is approximately halfway between the toe and the top of a steep, rocky bluff. We thus conclude that the court erred in failing to declare that the eastern boundary of parcel A is the railroad right-of-way fence that runs along the top of the bluff as depicted in the survey maps of a licensed land surveyor and professional engineer George Schlecht, dated April 15, 1981 and filed April 30, 1981, and we therefore modify the judgment accordingly.

Although neither plaintiffs nor defendants submitted the deeds to their respective parcels in evidence at trial, they essentially agree that the 1872 deed conveying the parcel from the Atwaters to the Cayuga Lake Railroad Company is controlling with respect to the boundary between parcel A and the "upland parcel." That deed, however, provides only a vague description of the boundary, as follows: "on the east side of [the railroad bed] centre line all the land in the bluffs that may be required to grade and make the road bed of said railroad and sufficient room for bed for side track and to protect the same by the necessary and usual slopes be the same more or less." We conclude that the court erred in relying upon a survey map purportedly created in 1904 by the Cayuga Lake Railroad Company in determining the eastern boundary of parcel A. That survey map

is neither signed nor dated, and defendants' expert who testified with respect to that survey map was unable to establish its authenticity. We therefore conclude that the survey map "lacks any indicia of reliability as admissible documentary evidence" (*Dewey v Gardner*, 248 AD2d 876, 878 [1998]). Because defendants' expert was unaware whether the survey map had been filed, the map cannot be said to be prima facie evidence of its contents (*see* CPLR 4522).

We conclude that plaintiffs established that the railroad right-of-way fence was constructed either by the Cayuga Lake Railroad Company or its successor, the Lehigh Valley Railroad. Plaintiffs' expert testified that the wire mesh fence with steel posts has the same wire gauge as the other fencing still in existence along the entire length of the former railroad bed and that it differs substantially from fencing typically used for agricultural purposes in that area. The latter fencing utilized wooden posts or ran from tree to tree. It is undisputed that the Lehigh Valley Railroad abandoned operations on that railway line in approximately 1950, and we thus conclude that the fence was constructed at some point prior to 1950.

We further conclude that the location of the fence is a practical boundary that complies with the description of the 1872 conveyance granting to the Cayuga Lake Railroad Company "all the land in the bluffs that may be required to grade and make the road bed . . . and to protect the same by the necessary and usual slopes." Although the parties' predecessors in interest litigated the issue whether the western boundary of parcel A was the high water mark or the low water mark (*see Pyle*, 163 AD2d 820 [1990]), they did not litigate the issue with respect to the eastern boundary of parcel A. The record establishes that the plaintiffs herein, their predecessors in interest, and defendants' predecessors in interest have treated the railroad right-of-way fence as the eastern boundary of parcel A since at least 1950, and "[i]t is the settled rule in this state, resting upon public policy, that a practical location of boundaries which has been acquiesced in for a long series of years will not be disturbed" (*Katz v Kaiser*, 154 NY 294, 298 [1897]; *see Chavoustie v Stone St. Baptist Church of Chaumont*, 171 AD2d 1055, 1056 [1991]). Furthermore, it is well established that, when resolving disputes concerning the location of a boundary, "natural landmarks and artificial monuments take precedence over mere metes and bounds descriptions" (*Zelnik Realty v York*, 170 AD2d 926, 928 [1991]; *see Case v Dexter*, 106 NY 548, 554 [1887]; *Brown v Ames*, 290 AD2d 693, 694 [2002]; *Hibiscus Harbor v Ebersold*, 63 AD2d 824, 825 [1978], *appeal dismissed*

45 NY2d 837 [1978]). Thus, the railroad right-of-way fence located at the top of the bluff takes precedence over the metes and bounds description contained in the survey map purportedly created by the Cayuga Lake Railroad Company and the metes and bounds description contained in the 1981 survey maps of George Schlecht.

We have reviewed plaintiffs' remaining contention and conclude that it is without merit. Present—Scudder, P.J., Smith, Centra, Peradotto and Pine, JJ.